UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


NORMAND C. DAUPHINAIS,

        Petitioner,

v.                                                    CASE NO. 6:09-cv-1696-Orl-28KRS

ATTORNEY GENERAL, STATE OF FLORIDA, et al.,

        Respondents.

_____

### ORDER

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 6).  Petitioner filed a reply to the response (Doc. No. 9).

      Petitioner alleges seven claims for relief in his habeas petition:  1) the trial court erred in finding that Petitioner had waived claim one raised in his Rule 3.850 motion; 2) trial counsel was ineffective for misadvising Petitioner "concerning sentencing enhancements [which] caused Petitioner to reject a plea offer"; 3) trial counsel was ineffective for failing to investigate, depose, and call Petitioner's wife and the records custodian for Sun Trust Bank as witnesses; 4) trial counsel was ineffective for failing to

review crucial photographic evidence; 5) trial counsel was ineffective for failing to impeach, at trial, the victim with a prior inconsistent statement and Officer Joe Capece when he testified that the victim's shirt was torn; 6) trial counsel was ineffective for failing to request "a limiting standard 2.5 jury instruction with regard to the jury's consideration of Petitioner's prior felony convictions"; and 7) he is entitled to relief based on the cumulative effect of trial counsel's errors.

## I.   *Procedural History*

Petitioner was charged by information with one count of sexual battery (count one) and one count of false imprisonment (count two). A jury trial was held, and a mistrial was declared. A retrial ensued, and Petitioner was found guilty as charged. The trial court adjudicated Petitioner guilty of the crimes and sentenced him to imprisonment for a term of thirty years as to count one and five years as to count two, with the sentences to run concurrently. As to count one, the trial court sentenced him as both a habitual felony offender ("HFO") and a prison releasee reoffender ("PRR"). As to count two the trial court sentenced him as a HFO. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam.*

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court. An evidentiary hearing was held on the motion, and the trial court subsequently entered an order denying the motion. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam.*

## II.   Legal Standards

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

3

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.   *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2]  *Id.* at 687-88.  A court must

---

[1]In considering the "unreasonable application"inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant,* 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary,* 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994).

### III.   *Analysis*

### A.   *Claim One*

Petitioner contends that the trial court erred in finding that he had waived claim one raised in his Rule 3.850 motion.

"A habeas petition must allege the petitioner's detention violates the constitution,

5

a federal statute, or a treaty. . . . [A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989). Consequently, "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).[3] In this claim, Petitioner alleges errors in the state postconviction review process which are not addressable through habeas corpus proceedings, and, therefore, it is denied.

**B.    Claim Two**

Petitioner argues that trial counsel was ineffective for misadvising Petitioner "concerning sentencing enhancements [which] caused Petitioner to reject a plea offer." According to Petitioner, Mr. Arnold Harrison, his counsel during the first trial, informed him that he could receive a sentence of thirty years if he was classiifed as a HFO or fifteen years if he was classified as a PRR. However, Petitioner states that Mr. F. Wesley Blanker, his counsel during the second trial, incorrectly informed him, prior to trial, that he could not be sentenced as both a HFO and a PRR and that the trial court would sentence him as

---

[3] In *Spradley v. Dugger*, 825 F.2d 1566 (11th Cir. 1987), the petitioner argued that the state trial court violated his due process rights when it denied his Rule 3.850 motion because it did not conduct an evidentiary hearing and because its opinion denying relief failed to attach those portions of the record on which it relied. The Eleventh Circuit Court of Appeals held that the state trial court's alleged errors in the Rule 3.850 proceedings did not undermine the validity of the petitioner's conviction; therefore, the claim went to issues unrelated to the cause of the petitioner's detention, and it did not state a basis for habeas relief. *Id.* at 1567.

6

a PRR only, with a fifteen year maximum sentence.   Petitioner contends that, if he had known that his sentencing exposure was thirty years, he would have accepted the State's plea offer of ten years. This claim was raised in Petitioner's Rule 3.850 motion and was denied because there had been no showing that the State offered a plea prior to the start of the second trial.

The record reflects that, immediately prior to jury selection in the second trial, prosecutor William Jay informed the trial court, in the presence of Petitioner and Mr. Blankner, that 1) there had been a plea offer in this case of ten years, and 2) he (Mr. Jay) had provided notice to Petitioner of the State's intent "to seek prison releasee reoffender enhanced punishment, as well as habitual felony offender and habitual violent felony offender enhancements." (Appendix E, Transcript of Trial at 5.) After Mr. Jay's statement, Petitioner acknowledged to the trial court that he had rejected plea offer. *Id.*

Mr. Jay testified at the evidentiary hearing that a plea offer had been presented to Mr. Harrison prior to the first trial and immediately after the mistrial. (Appendix Q, Transcript of Evidentiary Hearing at 125-26.) However, a plea offer was never presented to Mr. Blankner, and "there was never any discussions with Mr. Blanker about a plea offer." *Id.* at 126-29. Mr. Jay further stated that he "put on the record [at the beginning of the second trial] that the offer was 10 years, but [he] was speaking in the past tense, that there was an offer of 10 years before the first trial that had been rejected." *Id.* at 128.

Mr. Blankner testified that at the evidentiary hearing that he "believed" that a plea offer was made on the day of trial; that the plea was rejected because Petitioner "was not

guilty"; and that he did not recall any discussions with Petitioner about whether Petitioner would be sentenced as a HFO or a PRR or the consequences of such classifications. *Id.* at 48-49.

This claim is clearly without merit. First, Mr. Jay testified that there was no plea offer with regard to the second trial. Second, even if there had been a plea offer, Petitioner was aware that the State would be seeking both PRR and a HFO classifications since Mr. Jay specifically mentioned the State's intentions when discussing the plea offer prior to the second trial. Yet, despite knowing that the State was seeking both PRR and HFO classifications, Petitioner rejected the plea offer. Finally, Mr. Blankner testified that he did not recall discussing with Petitioner whether he would be  would be sentenced as a HFO or a PRR or the consequences of such classifications. Consequently, the Court finds that there was no plea offer with regard to the second trial and that, even if there had been a plea offer, Petitioner's rejection of the plea offer was not based on any misadvise regarding the HFO and PRR classifications.

In addition, the Court finds the case of *Green v. Johnson*, 46 F. Supp. 2d 614 (N.D. Tex. 1999), to be persuasive. In *Green*, the petitioner argued that he received ineffective assistance of counsel because his trial attorney failed to persuade him to accept a plea offer. The district court discussed this issue as follows:

> Green's claim is a quintessential example of attempting to have his cake and eat it too. A principal reason for entering into a plea bargain is to avoid the uncertain outcome of a trial. Having already put the State to its burden of proof by pursuing an acquittal, Green now seeks the best of all worlds: the benefit of the proffered plea bargain (a limit to his sentence exposure) without the burden of such a bargain (the certainty of being convicted).

> Human nature being what it is, if habeas relief were freely granted in such
> circumstances, no rational defendant would ever accept a plea bargain before
> trial. Instead, he would try to obtain an acquittal at trial and, if unsuccessful,
> retroactively seek--through habeas relief--the benefit of any plea bargain
> previously offered by the prosecution. Because of the "heads I win, tails you
> lose" quality of such a habeas claim, courts have been chary of granting relief
> in these circumstances.

*Id.* at 622-23.  Under the circumstances, the Court finds that Petitioner has not shown

deficient performance on the part of counsel or that he sustained prejudice.

As such, the state court's rejection of this claim was not contrary to, nor did it

involve an unreasonable application of, clearly established Supreme Court precedent, nor

was it based upon an unreasonable determination of the facts in light of the evidence

presented.  Thus, claim two is denied.

## C.   *Claim Three*

Petitioner asserts that Mr. Blankner was ineffective for failing to investigate, depose,

and call as witnesses Fabbie Dauphinais (Petitioner's wife, hereinafter referred to as

"Fabbie") and the records custodian for Sun Trust Bank.  He alleges that Fabbie would

have testified that, when Petitioner returned home on the night of the crime, she retrieved

cocaine from his pants and flushed it down the toilet.  He alleges that the records custodian

would have testified that Petitioner made a $200 withdrawal from the ATM at the time of

the crime.  This claim was raised in Petitioner's Rule 3.850 motion and was denied.

The issue of whether Mr. Blankner was ineffective with regard to calling Fabbie as

a witness is without merit.  At the evidentiary hearing, Mr. Blankner testified that he and

Petitioner "made a decision not to" call Fabbie as a witness.  (Appendix Q, Transcript of

Evidentiary Hearing at 72.)  Mr. Blankner also stated that "there was an up side and a down side to her [testimony], and the down side was greater than the up side." *Id.* at 72. It is apparent that Mr. Blankner made a strategic decision not to call Fabbie as a witness, and this decision was reasonable and should not be second-guessed.  Further, there has been no showing of prejudice because her proposed testimony would not have established a) where and when the cocaine was obtained, and b) that a sexual battery had not occurred.

Likewise, the issue of whether Mr. Blankner was ineffective with regard to calling the records custodian as a witness is without merit.  At trial, Mr. Blankner explained to the trial court that the records pertaining to the ATM withdrawal had been "destroyed because of something that occurred in the banking system." (Appendix E, Transcript of Trial at 221, 471.) Nevertheless, Petitioner testified at trial that he had withdrawn money from the ATM as part of an alleged drug transaction, and Petitioner was permitted, despite the absence of a records custodian, to submit into evidence his bank statement reflecting the $200 withdrawal from the ATM on the day of the crime. *Id.* at 484-86.  Under the circumstances, Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice.

Accordingly, Petitioner has not shown that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  Thus, claim three is denied.

10

### D.   Claim Four

Petitioner states that Mr. Blankner was ineffective for failing to review crucial photographic evidence.  In particular, he claims that Mr. Blankner failed to review a) "photographic evidence of the alleged victim's vaginal area having been shaved," and b) Nurse Diane Dickman's medical report of the victim's injuries.  He contends that counsel also failed to depose Ms. Dickman and that, as a result of these failures, counsel Mr. Blankner did not explore the possibility that the "the two lacerations (nicks) found" in the victim's "vaginal area" resulted from shaving.  This claim was raised in Petitioner's Rule 3.850 motion and was denied.

Ms. Dickman was a clinical nurse coordinator at the sexual assault unit where the victim was treated.  (Appendix E, Transcript of Trial at 326-27.)  She examined the victim and testified, at trial, that the victim had suffered injuries to her genital area and that the injuries were consistent with the sexual assault described to her by the victim.  *Id.* at 334-36. Ms. Dickman did not testify at the Rule 3.850 evidentiary hearing, and nothing in her testimony at trial suggested that the lacerations could have been caused by shaving.  In addition, Petitioner has failed to present an affidavit or any other evidence from Ms. Dickman supporting his allegations in this claim.  Further, Petitioner's allegations that the lacerations *could* have been by shaving is speculative, and they are unsupported by any facts or evidence from any source.  Petitioner's self-serving speculation is insufficient to sustain a claim of ineffective assistance of counsel.

Also, in light of the evidence presented by the State at trial, which included the

11

victim's testimony, Petitioner has not established prejudice with regard to this matter.

Consequently, it cannot be said that the state court's denial of this claim was "contrary to,

or involved an unreasonable application of, clearly established federal law" or was "based

on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d).

As a result, Petitioner is not entitled to federal habeas relief on this claim.

E.    *Claim Five*

Petitioner states that trial counsel was ineffective at trial for failing to impeach 1)

the victim with a prior inconsistent statement, and 2) Officer Joe Capece when he testified

that the victim's shirt was torn. Petitioner claims that Mr. Blankner should have

impeached the victim with a contradiction between her trial testimony that her pants were

zippered and her deposition testimony that her pants were "slip-on." He also claims that

Mr. Blankner should have impeached Officer Capece with a contradiction between his trial

testimony that the victim's shirt was torn and evidence presented at trial that the shirt was

not torn. This claim was raised in Petitioner's Rule 3.850 motion.

Ostensibly, the victim testified at deposition that, at the time of the crime, she was

wearing slip-on pants, while at trial she testified that she was wearing zippered pants.

Nevertheless, Petitioner has failed to demonstrate the significance of this discrepancy since

the victim testified at trial that her zippered pants "could be easily pulled down if they're

forced." (Appendix E, Transcript of Trial at 119.) Moreover, at trial, Mr. Blankner

impeached the victim with regard to numerous discrepancies between her trial testimony

and her deposition testimony. For example, counsel revealed the discrepancy between her

12

trial testimony that she was not "tipsy" versus her deposition testimony that she was tipsy. *Id.* at 88-89. In fact, Petitioner testified at the evidentiary hearing that Mr. Blankner informed him that the reason he did not impeach the victim with regard to the zipper discrepancy was because "we got her with enough" impeachment. (Appendix Q, Transcript of Evidentiary Hearing at 116.) Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice.

As to Officer Joe Capece incorrectly testifying that the victim's shirt was torn, Petitioner has not shown prejudice with regard to this matter. There was ample evidence presented by the State in support of the conviction.

Therefore, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

## F.   *Claim Six*

Petitioner avers that Mr. Blankner was ineffective for failing to request "a limiting standard 2.5 jury instruction with regard to the jury's consideration of Petitioner's prior felony convictions." This claim was raised in Petitioner's Rule 3.850 motion.

Standard jury instruction 2.5 deals with conviction of certain crimes as impeachment and provides that "[t]he evidence that you are about to receive that [(witness)] [(defendant)] has been convicted of (crime) should be considered by you only in weighing the credibility of [(witness's)] [(defendant's)] testimony and not for any other purpose."

13

At the evidentiary hearing, Mr. Blankner testified that he did not request the instruction because it would have brought Petitioner's convictions to the attention of the jury. (Appendix Q, Transcript of Evidentiary Hearing at 59-60.) Mr. Blankner's strategy with regard to this matter was reasonable, and Petitioner has not shown prejudice. Accordingly, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

### G.    *Claim Seven*

Petitioner states that he is entitled to relief based on the cumulative effect of trial counsel's errors. This claim was raised in Petitioner's Rule 3.850 motion.

As discussed above, the Court has found Petitioner's claims to be without merit. "Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit." *Vining v. State*, 827 So. 2d 201, 219 (Fla. 2002). Hence, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Normand C. Dauphinais is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

14

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[4]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this ⏋| day of March, 2011.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
sa 3/30
Counsel of Record
Normand C. Dauphinais

---

[4]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.

15